**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Stephanie Lopez,<br>Plaintiff,<br>v.<br>City of Nogales, et al.,<br>Defendants. | No. CV-25-00702-TUC-AMM (LCK)<br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Defendant's Motion for Partial Dismissal of Plaintiff's Third Amended Complaint. (Doc. 36.) Plaintiff responded in opposition, and Defendant filed a Reply. (Docs. 37, 38.) Pursuant to the Rules of Practice of the Court, this matter was referred to Magistrate Judge Kimmins for Report and Recommendation. The Magistrate Judge recommends the District Court, after its independent review of the record, grant the motion to dismiss, in part, and deny the motion, in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff initiated this Title VII action in December 2025. (Doc. 1.) In response to a motion to dismiss, Plaintiff filed an Amended Complaint. (Docs. 14, 18.) The parties stipulated to Plaintiff filing a Second Amended Complaint, which the Court granted. (Docs. 20, 22, 23.) After Defendant filed a second motion to dismiss, Plaintiff sought leave to amend. (Docs. 24, 25.) The Court granted amendment, and Plaintiff filed a Third Amended Complaint, which is the operative complaint before the Court. (Docs. 29, 32.)

Below, the Court summarizes the allegations from the Third Amended Complaint. (Doc. 32.) Plaintiff alleges that she is a firefighter for the Nogales Fire Department. (*Id.* ¶ 21.) On January 22, 2025, Plaintiff was lactating. (*Id.* ¶ 22.) Her supervisor, Chief Larriva called her to his office, questioned her about her personal life and prior pregnancy, and directed her to cease using the female locker room as a lactation room. (*Id.* ¶¶ 24-25.) Over her objection, he indicated she could use the restroom to express breast milk. (*Id.* ¶¶ 27-28.) The Chief also commented on her returning from light duty, which she took as pressure to return to full-duty work although she was breastfeeding and had a medical restriction from her doctor. (*Id.* ¶ 29.) On January 24, Chief Larriva designated a lactation space which was separated from his office by a window with blind access within his office. (*Id.* ¶ 31.) That day, while expressing milk in the designated room, Plaintiff noticed Chief Larriva observing her through the blinds. (*Id.* ¶ 32.) She reported the event to Human Resources but had to continue using the room for two more days, and Chief Larriva made comments about his control over the blinds. (*Id.* ¶ 34.)

Plaintiff met with the Human Resources Manager for the City of Nogales on January 28, 2025, after which the City Manager prohibited Chief Larriva from contacting Plaintiff. (*Id.* ¶¶ 37-38.) Chief Larriva continued to interact with Plaintiff. (*Id.* ¶ 40.) In February 2025, Plaintiff was denied promotion to Fire Captain and two candidates less qualified than Plaintiff were selected. (*Id.* ¶¶ 43-45.) On April 26, 2025, the City Attorney and City Manager informed Plaintiff that they had determined her claims regarding Chief Larriva had no validity, and they lifted the no contact order. (*Id.* ¶ 46.) The City Attorney stated, "[i]f every female had to pump, we would never have any female firefighters." (*Id.*)

From April 21 to June 13, 2025, Plaintiff had a work restriction from her medical provider limiting her from entering structure fires, responding to hazardous chemical spills, and other duties while she was breastfeeding. (*Id.* ¶¶ 47, 48.) In May 2025, Human Resources told Plaintiff that Chief Larriva had reassigned her to the City Cemetery for manual labor, in violation of her medical restriction and in contrast to light duty assignments given to other firefighters. (*Id.* ¶¶ 50, 51.) On May 27, 2025, Chief Larriva

insisted she complete the wildland "pack test." (*Id.* ¶¶ 52-54.) She unsuccessfully attempted the test with a male vest (as a female vest was not made available) and developed persistent mastitis attributed to the vest worn for the test. (*Id.* ¶¶ 53, 55-56.)

Plaintiff submitted a charge of discrimination with the Arizona Civil Rights Division (ACRD) on June 24, 2005 (ACRD Charge 1). (Doc. 32, Ex. A.) The ACRD issued a right to sue on that charge on September 23, 2025; and the EEOC issued a right to sue on the charge on May 5, 2026. (*Id.*, Exs. B, C.) After she filed with the ACRD, Chief Larriva instructed all battalion chiefs not to assign Plaintiff to Fire Station 1. (Doc. 32 ¶ 57.)

On July 9, Chief Larriva directed Plaintiff to complete the pack test, but she refused because of mastitis and a physician's note restricting her from compressing her chest; the chief documented it as a failed test. (*Id.* ¶ 59.) Due to her "failures" on the pack tests, Battalion Chief D'Albini removed her from full-duty status, despite her physician's note. (*Id.* ¶¶ 63-64.) On October 22, 2025, over Plaintiff's objection, Chief Larriva proctored her next pack test; Plaintiff passed the test (despite having been refused a female vest), but she experienced pain, inflammation, and complications. (*Id.* ¶¶ 65-66.)

Plaintiff's structure fire boots expired in July 2025 and developed a tear in January 2026. (*Id.* ¶¶ 60-62.) Despite a battalion chief making requests to Chief Larriva, he did not provide her properly fitted replacement boots, which precluded her from responding to structure fires. (*Id.* ¶ 62.) When replacements were provided to her in January 2026, they were too small. (*Id.* ¶¶ 75-77.) Chief Larriva ordered new boots in March 2026, which were too large and of a different type than that worn by other firefighters. (*Id.* ¶¶ 81-84.) Chief Larriva was notified of the problem, but the issue has not been resolved. (*Id.* ¶¶ 87-91.) When receiving her uniform in October 2025, Plaintiff was not provided accountability tags or name tags and no replacements were ordered for her, which also precluded her from responding to a structure fire. (*Id.* ¶¶ 69-72.)

Plaintiff submitted a second charge of discrimination with the ACRD on April 16, 2026 (ACRD Charge 2). (*Id.* ¶¶ 14-15 & Ex. D.) The ACRD issued her a right to sue letter

on this second charge on June 10, 2026; the EEOC issued a right to sue letter on this charge on June 11, 2026. (Doc. 32 ¶ 16 & Exs. E, F.)

In the Third Amended Complaint, Plaintiff alleges she was subjected to retaliation by the City of Nogales and Chief Larriva after reporting the chief's conduct, and she was subjected to a hostile work environment due to a pregnancy-related medical condition. She alleges two claims: a Title VII claim of Sexual Harassment (Hostile Work Environment); and a Title VII Retaliation Claim.

**STANDARD OF REVIEW**

The United States Supreme Court has found that, to state a claim, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id.* at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (interpreting Rule 8(a) and explaining that there must be specific, non-conclusory factual allegations sufficient to support a finding by the court that the claims are more than merely possible, they are plausible.). A mere formulaic recitation of the elements of a cause of action is not sufficient to establish a claim, and legal conclusions are not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 679. Dismissal is only appropriate if the complaint's factual allegations, together with all reasonable inferences drawn in the plaintiff's favor, fail to state a plausible claim that Defendant is liable for the alleged misconduct. *Id.* at 678. Additionally, when a court grants dismissal, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quoting *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990)).

**DISCUSSION**

Defendant argues that Plaintiff has failed to state a claim for hostile work environment. The City also argues that some of Plaintiff's allegations of retaliation are time

barred or unexhausted. And Defendant argues that she fails to state a disparate treatment claim. In the alternative, Defendant requests that Plaintiff provide a more definite statement because she has intertwined multiple legal theories—harassment, disparate treatment, failure to accommodate, and retaliation—into two claims. As an initial matter, Plaintiff states that she is not bringing claims for disparate treatment or failure to accommodate. (Doc. 37 at 11.)[1] Although those terms are mentioned in the Third Amended Complaint (Doc. 32 ¶¶ 112, 119), the Court finds it clear that Plaintiff currently is asserting two claims, one for hostile work environment (Claim 1) and one for retaliation (Claim 2). Therefore, a more definite statement is not necessary.

**CLAIM 1: SEXUAL HARASSMENT**

Defendant argues that Plaintiff has failed to state a claim for sexual harassment. "An employer is liable under Title VII for conduct giving rise to a hostile environment where the employee proves (1) that he was subjected to verbal or physical conduct of a harassing nature, (2) that this conduct was unwelcome, and (3) that the conduct was sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1109-10 (9th Cir. 2000) (quoting *Pavon v. Swift Trans. Co., Inc.*, 192 F.3d 902, 908 (9th Cir. 1999)); *see also Manatt v. Bank of Am., NA*, 339 F.3d 792, 798 (9th Cir. 2003) ("teasing, offhand comments, and isolated incidents" are not sufficient). A plaintiff must prove that "any harassment took place 'because of sex.'" *Dominguez-Curry v. Nev. Transp. Dep't.*, 424 F.3d 1027, 1034 (9th Cir. 2005) (quoting *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 871-72 (9th Cir. 2001)). She also must establish that she believed the conduct to be abusive and that a reasonable person would find it so; thus, the working conditions must be subjectively and objectively offensive. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998).

---

[1] In contradiction to her assertion that she is not bringing a disparate treatment claim, Plaintiff contends that she has alleged sufficient facts to support a disparate treatment claim. (Doc. 37 at 11-12.) It appears to the Court that some of Plaintiff's factual allegations of disparate treatment may not have been timely exhausted. Regardless, because Plaintiff has not pled disparate treatment as its own claim, and she has not requested leave to amend to include such a claim, the Court reviews only whether Plaintiff has stated a claim for retaliation and harassment.

The Ninth Circuit directs that:

> [t]o determine whether conduct was sufficiently severe or pervasive to violate Title VII, we look at "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."

*Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), as amended (Jan. 2, 2004). "It is enough . . . if such hostile conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1463 (9th Cir. 1994). To the extent the harassment is conducted by a supervisor, the employer bears vicarious liability. *Nichols*, 256 F.3d at 875.

Plaintiff alleged in the Third Amended Complaint that she was subjected to unwelcome conduct related to her pregnancy-related condition of expressing breast milk. (Doc. 32 ¶ 99.) The conduct she identified included: Larriva questioned Plaintiff about her personal life and pregnancy; Larriva took away her access to a private lactation room; Larriva observed her while she pumped breast milk and commented on his ability to control the blinds into the room; Larriva repeatedly violated a no contact order put in place after she complained about his conduct; city officials determined her complaint about the chief's behavior was not valid, and the chief suffered no consequences for his actions; Larriva and Estes made discriminatory remarks to her; and Larriva pressured/required her to take a pack test in May and July (with a male vest) that violated her doctor's orders while she was breastfeeding.[2] Plaintiff alleges that this conduct was severe, pervasive, and altered the conditions of her employment.

"At the pleading stage, a court may not have a complete picture of the circumstances surrounding the allegations of harassment." *Guthrie v. Hurwitz*, No. 1:18-CV-282-AWI-

---

[2] In the Third Amended Complaint, Plaintiff also pled denial of a promotion as part of her hostile work environment claim. (Doc. 32 ¶ 103.) In her motion response, however, Plaintiff identified Defendant's failure to promote her as a discrete act of retaliation that was not part of her hostile work environment claim. (Doc. 37 at 9.) Considering Plaintiff's disavowal, and because the denial of promotion is a discrete act, the Court does not include it in the analysis. *See Morgan*, 536 U.S. at 115 (distinguishing harassment from discrete acts that occur on a particular day and are individually actionable).

BAM, 2018 WL 6460093, at *5 (E.D. Cal. Dec. 10, 2018) (quoting *City & Cnty. of San Francisco*, 2013 WL 1287431, at *4 (N.D. Cal. Mar. 28, 2013)). However, taking all of Plaintiff's allegations as true, these events occurred over a period of more than six months and were not isolated to a limited period. The primary actor alleged to have repeatedly engaged in the unwelcome conduct was Plaintiff's supervisor, the Chief of the Fire Department. Again and again, he not only harassed her, but also signaled that she had no recourse for his conduct. Her complaint was rejected by city officials, one of whom also made a discriminatory remark to her. *See Marasco v. Ariz. Bd. of Regents*, No. CV-12-01750-PHX-FJM, 2013 WL 4029167, at *3 (D. Ariz. Aug. 8, 2013) (finding it was sufficient at the pleading stage to allege the repeated use of derogatory names, without consequence, and transfer for the purpose of limiting his pay). Thus, she has alleged that she was subjected to unwelcome harassing verbal or physical conduct due to lactating. And this behavior could be found to be sufficiently pervasive to have created an abusive environment that polluted the workplace. Additionally, Chief Larriva intentionally observed Plaintiff in a partially undressed state and suggested to her that he could choose to do so again, which could be found by a reasonable person to be severe. Construing all facts in Plaintiff's favor, she has stated a claim for a hostile work environment that is plausible on its face.

**CLAIM 2: RETALIATION**

Defendant argues that portions of Plaintiff's retaliation claim must be dismissed because they were not exhausted and/or are untimely. With respect to retaliation, Plaintiff alleged in the Third Amended Complaint that she engaged in protected activity by reporting Chief Larriva to HR in January 2025 and filing two discrimination charges with the ACRD. She alleged that, in retaliation for her protected activity, Defendant subjected her to the following adverse employment actions: denial of promotion to Fire Captain; pressure to take the pack test despite doctor's orders to the contrary; transfer to the cemetery; denial of work at Station 1; and failure to provide required gear, which led to a demotion.

**Exhaustion**

Before filing in federal court, plaintiffs are required by statute to administratively exhaust their Title VII claims by timely bringing a charge of discrimination before the EEOC (or appropriate state agency). *Ramirez v. Kingman Hosp. Inc.*, 374 F. Supp. 3d 832, 854 (D. Ariz. 2019). Although not jurisdictional, the rule is "'mandatory' in the sense that a court must enforce the rule if a party 'properly raise[s]' it." *Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 548-49 (2019) (quoting *Eberhart v. United States*, 546 U.S. 12, 19 (2005) (per curiam)). Exhaustion encompasses allegations that "fell within the scope of the EEOC's actual investigation or an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *E.E.O.C. v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994). The Court must construe Plaintiff's administrative charge "with the utmost liberality." *Id.* (quoting *Kaplan v. Int'l All. of Theatrical & Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975)). If new allegations in the complaint are "like and reasonably related" to the allegations in the administrative charge, then the claims are exhausted. *Id.* (quoting *Oubichon v. N. Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973)). When evaluating exhaustion, the Court may consider the basis alleged for the discrimination, the dates alleged in the charge, the actors named in the charge, and the location of the alleged discrimination. *Freeman v. Oakland Unified Sch. Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (quoting *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002)).

In ACRD Charge 1, Plaintiff alleged that she was discriminated against based on sex and was denied a reasonable accommodation for her pregnancy. (Doc. 32-1 at 2.) She also alleged that Chief Larriva directed her not to use the women's locker room for lactation and, when she used the room that he directed her to, she found him looking at her through the blinds. (*Id.*) She asserted that her accommodation for a private space to pump breast milk was revoked. (*Id.*) Although HR gave Chief Larriva a no-contact order when she complained, in April 2025, the ban was lifted based on a finding that her claim was invalid. (*Id.*) Further, she alleged the City Attorney stated, "If every female had to pump, we would never have any female firefighters." (*Id.*)

In addition to not marking retaliation on the form she completed for ACRD Charge 1, she did not provide any allegations of retaliation in her first charge. (Doc. 32-1 at 2-3.) Plaintiff alleged the protected activity of reporting her concerns of discrimination to HR on February 12, 2025. (*Id.* at 3.) However, the only allegations that occurred after that report were: a no-contact order; lifting of the no contact order when her complaint was found to be not valid; and the City Attorney making a comment that could be construed as discriminatory against women that breastfeed. (*Id.*)

Plaintiff contends ACRD Charge 1 asserted a protected activity and a resulting adverse action. The Court disagrees. The charge did not identify a single act that would qualify as an adverse action to support a retaliation claim. (*Id.*) This conclusion is supported by a review of the Third Amended Complaint, which did not allege that any of the acts in ACRD Charge 1 qualified as adverse actions. (*See* Doc. 32 ¶¶ 111-17.) Contrary to Plaintiff's suggestion in her response brief (Doc. 37 at 6), this is not a scenario where a claimant included the relevant facts of retaliation in the charge but merely failed to label them as retaliatory. *See Vasquez*, 349 F.3d at 644-46 (finding retaliation sufficiently exhausted as to facts raised in the EEOC charge even though not labeled as retaliation). Plaintiff alleged only that she engaged in a protected activity. Construing that allegation sufficient to exhaust a retaliation claim goes beyond a liberal construction of the charge. Plaintiff's allegations of retaliation, as set forth in the Third Amended Complaint, are not reasonably related to the allegations in ACRD Charge 1.

The cases Plaintiff cited do not lead a different result. First, Plaintiff cites the case of *Day v. LSI Corp.*, 174 F. Supp. 3d 1130, 1166 (D. Ariz. 2016). With limited analysis, the Court in *Day* found retaliation sufficiently exhausted despite the claimant failing to mark the retaliation box on the charge form. *Id.* at 1166-67 (granting defendant summary judgment on the retaliation claim because Day could not establish the prima facie elements of the claim). Although Day's discrimination charge contained limited detail compared to his complaint, Day asserted in the charge: "I reported the matter to [HR] . . .. After reporting these issues, nothing was done and my treatment worsened. Instead it was suggested that I

resign . . . ." *Id.* Thus, Day's discrimination charge mentioned that he was treated worse after reporting discrimination. In contrast, ACRD Charge 1 does not suggest Plaintiff was subjected to a single adverse action, or even worse treatment, after her report to HR. Therefore, the retaliation allegations in her Third Amended Complaint would not reasonably be expected to come within the scope of the ACRD investigation and are not reasonably related to the allegations in ACRD Charge 1. Therefore, ACRD Charge 1 did not exhaust a retaliation claim.

**Statute of Limitations**

Defendant argues that Plaintiff's allegations of retaliation are barred by the statute of limitations to the extent they occurred prior to June 20, 2025. An employee must file a Title VII charge with the relevant state agency within 300 days of the occurrence of a discriminatory act. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108-09 (2002); *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 674 (9th Cir. 1988) (treating the 300-day time limit as a statute of limitations).

Defendant does not dispute that Plaintiff exhausted her retaliation claim in ACRD Charge 2, which she filed on April 16, 2026. The 300-day limitations period runs back from that charge to June 20, 2025. Any discrete discriminatory acts that occurred prior to that date are time barred. *Morgan* 536 U.S. at 109, 122. This contrasts with a hostile work environment claim in which only one contributing act needs to have occurred within the limitations period. *Id.* at 117. Plaintiff's allegations of adverse actions (as relevant to the retaliation claim) occurring prior to June 20, 2025—specifically, the February 2025 denial of promotion, May 2025 reassignment to the cemetery, and May 2025 pack test—are barred by the statute of limitations. As asserted by Plaintiff, nothing prevents her from including such allegations as background, but they are not actionable as retaliation.

In a footnote, Defendant argues that Plaintiff's allegation in the Third Amended Complaint that she was demoted was not exhausted because it was not included in either ACRD discrimination charge. (Doc. 36 at 9 n.4.) Because Plaintiff's allegation of a demotion was closely tied to the denial of equipment, which was included in ACRD Charge

2, the Court finds it was reasonably related to and could reasonably be expected to have come within the scope of the ACRD investigation. The denial of equipment, and related demotion, is alleged to have occurred between July 2025 and March 2026; therefore, in addition to being exhausted, it is within the statute of limitations.

**Conclusion**

The Court finds that Plaintiff did not exhaust her retaliation claim by way of ACRD Charge 1, but she did exhaust her retaliation allegations by way of ACRD Charge 2. However, any adverse actions alleged to have been taken by Defendants in retaliation prior to June 20, 2025, are barred by Title VII's statute of limitations. The Court's exhaustion and statute of limitations determinations are legal ones, based on what Plaintiff included in ACRD Charge 1 and the date she filed ACRD Charge 2. For those reasons, the Court finds that Plaintiff could not amend her current complaint to plead additional facts that would cure the basis for dismissal of a portion of her complaint.

## **RECOMMENDATION**

Based on the foregoing, the Magistrate Judge recommends that the District Court enter an order granting in part, and denying in part, Defendant's Motion to Dismiss (Doc. 36). The Magistrate Judge recommends granting the motion with respect to adverse actions pled in Claim 2 alleged to have occurred prior to June 20, 2025, because they are barred by the statute of limitations. The Magistrate Judge recommends denying dismissal on all other grounds and denying a more definite statement.

Pursuant to Federal Rule of Civil Procedure 72(b)(2), any party may serve and file written objections within fourteen days of being served with a copy of the Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the District Court. If objections are not timely filed, they may be deemed waived.

Dated this 26th day of October, 2026.

Honorable Lynnette C. Kimmins
United States Magistrate Judge